**Susan Bristow-Ford, OSB 970362**
Bristow-Ford Law
522 SW 5th Ave., Ste. 1390
Portland, OR 97204
(503) 807-8821
susan@bristow-fordlaw.com

Attorney for Highbrow, LLC

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| HIGHBROW, LLC, a Nevada limited liability company<br><br>Plaintiff<br><br>v.<br><br>HIGHBROW MAGAZINE, LLC, a Virginia limited liability company, and TARA TAGHIZADEH, an individual<br><br>Defendants | Case No. _____<br><br>**COMPLAINT**<br><br>(Declaratory Judgment of No Trademark Infringement, False Designation of Origin, Unfair Competition, Anticybersquatting Consumer Protection Act, and Claim for Cancellation of Trademark at the United States Patent and Trademark Office, Federal and Virginia State Law)<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint, plaintiff Highbrow, LLC ("Highbrow") states and alleges as follows:

**Nature of the Case**

1. This is an action for declaration of rights under the Lanham Act (15 U.S.C. § 1051 *et seq.*, "Lanham Act") and the laws of Virginia.

2. Highbrow seeks a declaration from this court that its use of "HIGHBROW" for an online website dedicated to "stories through the lens of beauty," including beauty tips, reviews, and tutorials, does not infringe or otherwise violate the rights of defendants Tara Taghizadeh ("Taghizadeh") and Highbrow Magazine, LLC ("Highbrow Magazine").

3.      Highbrow also seeks to cancel a federal trademark registration for "HIGHBROW MAGAZINE" under the Lanham Act.

## Parties

4.      Highbrow is a Nevada limited liability company registered to do business in Oregon. Highbrow has three members. One member is Dark Room Digital, LLC, a California limited liability company, the sole member of which is Zoe Brenneke, a citizen of Oregon living in California. Another member is Monika Blunder, Inc., a citizen of California as a California corporation with its principal place of business in California. The third member is Sortis Ventures LLC, a Nevada limited liability, the sole member of which is Sortis Group, LLC, a Delaware limited liability company registered to do business in Oregon. Paul Brenneke and Zoe Brenneke are executive officers of Highbrow and are citizens of Oregon. The president of Sortis Ventures LLC is Paul Brenneke, a citizen of Oregon within the Portland division.

5.      Highbrow's financial, accounting, and back office functions are performed in Oregon within the Portland division. Highbrow's bank accounts are also located in Oregon.

6.      Ms. Taghizadeh is an individual and a citizen of Virginia.

7.      Highbrow Magazine is a Virginia limited liability company with its principal place of business in Virginia. Highbrow Magazine is a citizen of Virginia.

8.      Highbrow is not a citizen of any state in which Highbrow Magazine or Ms. Taghizadeh is a citizen.

9.      Highbrow Magazine conducts business in the State of Oregon and in Portland, Oregon.

10.     Highbrow Magazine exists primarily as an internet presence. On January, 17, 2016, it featured an article described specifically as written by a writer living in Portland,

Oregon. The article was still posted and available at the website on March 25, 2016. *See* Exhibit 3, attached and incorporated by reference.

11. On information and belief, Highbrow Magazine markets to and has received visits and views of its website from individuals in Portland, Oregon.

**Jurisdiction and Venue**

12. This court has jurisdiction of this civil action because it raises federal questions regarding trademarks and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et. seq.*, including the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125. This court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (trademarks and unfair competition), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

13. This court has supplemental jurisdiction of Highbrow's claims for declaratory judgment under Virginia state law pursuant to 28 U.S.C. § 1367.

14. This court has personal jurisdiction over Highbrow Magazine and Ms. Taghizadeh because each conducts business in the State of Oregon and within this district regarding the subject matter of this case.

15. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c). A substantial part of property that is the subject of this suit is situated in this district and judicial division, and both Highbrow Magazine and Ms. Taghizadeh are subject to this court's personal jurisdiction with respect to this suit.

16. An actual case or controversy has arisen between the parties. Ms. Taghizadeh has threatened litigation against Highbrow and asserted that its use of the mark HIGHBROW infringes her mark HIGHBROW MAGAZINE as used by Highbrow Magazine, LLC, as well as

asserting claims of unfair competition, false designation of origin and dilution under federal and Virginia laws, and a violation of the Anticybersquatting Consumer Protection Act.

## Background

17. Since 2015, Highbrow has used the mark "HIGHBROW" in connection with its online blog (http://www.highbrow.com) ("blog") devoted to stories about beauty and beauty products. The blog is an editorial destination created as a space to share authentic stories through the lens of beauty.

18. Highbrow's blog features short conversations, typically a few paragraphs in length, with professionals in the beauty industry such as, for example, jewelry designers, models, actresses, hairstylists, as well as writers and business professionals in the beauty and fashion industries. The blog also features such short pieces about beauty techniques, hair, makeup, skin, nails, and health, as well as reviewing beauty products such as, for example, skin cream, eye makeup, and reviewing fashion trends.

19. Highbrow's blog is designed with a white background, sparse text, an emphasis on fashion photography featuring both black-and-white and color photographs, and links at the bottom to postings on Highbrow's social media accounts such as Instagram. *See* Exhibit 1, attached and incorporated by reference.

20. There are no outside advertisements on Highbrow's blog. Instead, the blog features pictures of products in its written pieces that link, when a user clicks on them, to third-party websites. The blog also features such links in its written text. Highbrow receives income when users click on these links.

21. Highbrow's target demographic is stylists, beauticians, and those interested or involved in the beauty and fashion industries, typically women ages 18-25.

22. The HIGHBROW mark as used by Highbrow appears below and can be seen at htt://www.highbrow.com (*See, e.g.*, Exhibit 1):

# H I G H B R O W

23. Since 2015, Highbrow has invested significant time, money, resources, and work marketing, advertising, and promoting Highbrow under the HIGHBROW mark. Highbrow has so far invested more than $100,000 in the company, including approximately $20,000 to purchase rights to the "highbrow.com" domain and $850 to purchase rights to the "Highbrow" Instagram handle.

24. Highbrow has been covered by at least three websites, including Refinery 29 (at http://www.refinery29.com), Allure (at http://www.allure.com), and Byrdie (at http://www.byrdie.com).

25. Through its efforts, the mark has come to signify the high quality of its content related to the beauty industry. Highbrow has acquired distinction, reputation, and goodwill belonging exclusively to Highbrow.

26. In January, 2011, Ms. Taghizadeh applied for a trademark for "Highbrow Magazine." In March, 2011, the entity Highbrow Magazine, LLC, was formed in Virginia. Ms. Taghizadeh subsequently filed a statement of use for the mark "Highbrow Magazine" at the U.S. Patent & Trademark Office stating the mark's first use in commerce was August 18, 2011.

27. The PTO issued trademark registration number 4050814 on November 1, 2011 (the '814 registration) to Ms. Taghizadeh. The '814 registration is in international class 41 for "providing on-line magazines in the field of general interest, namely, arts, entertainment, news

and politics." *See* Exhibit 7 (listing of live federal trademark registrations with the word "highbrow"), attached and incorporated by reference.

28. The '814 registration disclaimed any exclusive rights to the word "MAGAZINE."

29. Highbrow Magazine's website is at http://www.highbrowmagazine.com. The website describes itself there as "a politically liberal, general-interest magazine covering News & Politics, Media, Arts & Entertainment, Food, and Travel." It further references a description of "a highbrow as 'the man or woman of thoroughbred intelligence who rides his mind at a gallop across country in pursuit of an idea.' It is that pursuit of an idea that inspires us at the magazine to analyze and critique the events and personalities of our time." *See* Exhibit 8, attached and incorporated by reference.

30. Highbrow Magazine's website is copyrighted by Highbrow Magazine. *See* Exhibits 2, 8 (identifying at the bottom "© Highbrow Magazine").

31. Highbrow Magazine's website asserts that "Highbrow Magazine is a Limited Liability Company." *See* Exhibit 8.

32. The Magazine's landing page features, at the very top, a third-party advertisement banner on which users can click to go to a different website. Below that advertisement is a logo featuring the word "Highbrow" over the word "magazine," with a green olive pierced by a toothpick as the letter "o" and an older male with male-pattern baldness, a mustache, a monocle, wearing a suit and tie, and smiling with a martini in his hand and his eyes closed. *See* Exhibit 2, attached and incorporated by reference.

33. The HIGHBROW MAGAZINE mark as used by the Magazine appears below:



Bristow-Ford Law
522 SW 5th Ave., Ste. 1390
Portland, OR 97204

34.     Neither the '814 registration nor Highbrow Magazine's online "About Us" description reference beauty or fashion.

35.     The Magazine features written content that is often short in length, such as a few paragraphs, but also longer content of several pages. The content is divided into "News & Features," "Media," "Film & TV," "Music," "Books & Fiction," "Food," "Cityscape," and "Photography & Art."

36.     The Magazine's design features a white background with dense text, as well as links to its social media accounts. In addition, the Magazine features several outside advertisements down the side of the website and an invitation to "Advertise With Us."

37.     There are currently seven federal trademark registrations using the word "HIGHBROW" for websites or other goods and services, including HIGHBROW MAGAZINE (the "highbrow registrations"). Two of those seven—one a word and the other a design—are for the mark "HIGHBROW" on a website aimed at educational and entertainment website content for children. *See* Exhibit 7.

38.     Five of the seven highbrow registrations, including the two for HIGHBROW, were filed and registered after Ms. Taghizadeh filed her trademark application and after the date to which she attested as the first use of "HIGHBROW MAGAZINE" in commerce.

39.     Neither Ms. Taghizadeh nor Highbrow Magazine ever filed an opposition at the U.S. Patent & Trademark Office regarding any of the five Highbrow registrations that followed HIGHBROW MAGAZINE.

40.     Neither Ms. Taghizadeh nor Highbrow Magazine, LLC has ever registered the domain "www.highbrow.com."

41. A number of other websites use or refer to the word "Highbrow" as either a title for a website or blog, or to describe a certain kind of magazine. *See, e.g.,* http://www.34st.com/section/highbrow/ (part of the student-run "arts and culture magazine of the Daily Pennsylvanian")

http://jezebel.com/5738019/where-are-the-women-at-highbrow-magazines (posing and considering the question of why women are lacking in representation "in the bylines of highbrow magazines," such as *The New Republic* and *The New Yorker*)

http://nymag.com/news/media/16585/ (positing and lamenting the decline of "America's highbrow magazines").

## Attempts to Resolve this Conflict

42. Beginning on December 30, 2015, Highbrow received a series of cease and desist letters from counsel on behalf of Ms. Taghizadeh asserting that the use of "HIGHBROW" for the blog infringed on the use of "HIGHBROW MAGAZINE" for Highbrow Magazine. *See* Exhibits 4, 5, and 6, each attached and incorporated by reference. Ms. Taghizadeh asserted that HIGHBROW was unauthorized, constituted "knowing and willful federal trademark infringement, unfair competition, and dilution under federal and service mark laws." She demanded, among other things and without offering any compensation, that Highbrow stop using HIGHBROW, transfer the domain "www.highbrow.com" to Ms. Taghizadeh, remove all social media accounts named or referencing the blog, and provide an accounting.

43. Ms. Taghizadeh's counsel and counsel for Highbrow discussed business resolution options, including the possibility of coexistence, and Ms. Taghizadeh rejected them all. Instead, Ms. Taghizadeh asserted that the Highbrow blog infringed on Highbrow Magazine

and that she would sue for federal and state trademark infringement if Highbrow did not comply with her demands. *See, e.g.*, Exhibit 5.

44. An actual and justiciable controversy exists between the parties based on Ms. Taghizdeh's claims and demands that create a reasonable apprehension of litigation and have brought into question Highbrow's right to use the mark "HIGHBROW." Highbrow wishes to resolve any controversy and determine that it has not, and will not, by continued use of the HIGHBROW mark, infringe or otherwise violate Ms. Taghizadeh's or Highbrow Magazine's rights in the HIGHBROW MAGAZINE mark.

## CLAIMS FOR RELIEF

### Count 1 – Declaratory Judgment of Non-Infringement under the Lanham Act

45. Highbrow is entitled to a declaration that its use of "HIGHBROW" mark does not constitute trademark infringement, false designation of origin, unfair competition, or violation of the Anticybersquatting Consumer Protection Act under the Lanham Act or at common law with respect to the HIGHBROW MAGAZINE.

46. Further, as sought in more detail in Count 3 of this complaint, Highbrow is entitled to a declaration that the '814 registration for HIGHBROW MAGAZINE is invalid and an order cancelling it under Section 37 of the Lanham Act, 15 U.S.C. § 1119.

47. Highbrow Magazine's website (http://www.highbrowmagazine.com) (the "magazine") features distinctly different content than Highbrow's blog, as well as a distinctly different look and feel and target demographic.

48. Highbrow Magazine's content is focused on news and politics with substantial commentary. For example, as of March 25, 2016, it showed two of its "Most Popular" stories as

"China's Economic Slowdown and the Art Market" and "How the U.S. Should Really View Cuba." *See* Exhibit 2.

49. On information and belief, Highbrow Magazine's demographic is older and more commonly male than that of the Highbrow blog's.

50. Highbrow makes no reference to Highbrow Magazine, uses a distinctive website appearance without outside advertisements the way the Magazine does, offers distinctly different content, does not offer news and political commentary, and is, among other things, aimed at a distinctly different audience than the Magazine.

51. The Highbrow blog does not intrude upon the '814 registration's description or the Magazine's description—neither of which mentions beauty or fashion.

52. Highbrow had, and has, no intent to profit from the Highbrow Magazine mark.

53. The number of other websites, businesses, and federal trademark registrations using the word "Highbrow" either alone or with other words, along with Highbrow Magazine's and Ms. Taghizadeh's acquiescence in failing to object to them, shows that consumers can distinguish between many uses of the word "Highbrow." The '814 registration for "Highbrow Magazine" is weak and allowed only very narrow protection, if any protection at all.

54. Highbrow Magazine and Ms. Taghizadeh use the mark "HIGHBROW MAGAZINE," not "HIGHBROW," and neither has ever registered the domain "highbrow.com." Yet Ms. Taghizadeh demanded that Highbrow hand over the "highbrow.com" domain—for which Highbrow paid approximately $20,000 and invested significant time, money, and resources developing the mark "HIGHBROW" with resulting media attention—for free.

55. Given the prevalence of the word "Highbrow" on the market, both for websites and for physical goods and services, the distinctiveness of Highbrow's goods and services, as

Bristow-Ford Law
522 SW 5th Ave., Ste. 1390
Portland, OR 97204

well as Highbrow's good faith in using the mark without trying to infer a connection to Highbrow Magazine, Highbrow's use of the word is not actionable under the Lanham Act or common law even if some consumers are actually confused.

56. Highbrow is entitled to reasonable attorney fees and costs of the action under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

### Count 2 – Declaratory Judgment of Non-Infringement and No Unfair Competition under the Laws of the Commonwealth of Virginia

57. Highbrow is entitled to a declaration that its use of the "HIGHBROW" mark does not constitute a violation of the laws of the Commonwealth of Virginia, such as Va. Code Ann. § 59.1-92.12 and its common law.

58. Highbrow's use of the "HIGHBROW" mark is not an imitation of the "HIGHBROW MAGAZINE" mark.

59. Highbrow does not compete directly with Highbrow Magazine.

60. Highbrow offers goods and services that are distinct, and not substantially similar, to those offered by Highbrow Magazine, within the meaning of the laws of Virginia.

61. Highbrow's good faith use of the "HIGHBROW" mark is not deceptive. Highbrow is not likely to cause confusion, mistake, or deception within the meaning of the trademark and unfair competition laws of the Commonwealth of Virginia.

### Count 3 – Cancelation of the '814 Registration

62. Neither Highbrow Magazine nor Ms. Taghizadeh has rights under the '814 registration because it is registered to Ms. Taghizadeh and only Highbrow Magazine has used it. Any rights to the mark HIGHBROW MAGAZINE were acquired only by Highbrow Magazine, LLC, and are narrowly limited to the uses identified on the website—which does not include beauty or fashion—and separate from the '814 registration.

63.     The U.S. Trademark Manual of Examination Procedure states that the owner of the mark must be the applicant. TMEP § 1201.

64.     The Highbrow Magazine website is owned and operated by Highbrow Magazine, LLC, not by Ms. Taghizadeh. The website is copyrighted by the LLC and asserts that Highbrow Magazine is a limited liability company.

65.     The use of HIGHBROW MAGAZINE was by Highbrow Magazine, LLC, not by Ms. Taghizadeh who is the registrant of the '814 trademark. Highbrow Magazine, LLC was formed in Virginia on March 4, 2011. Ms. Taghizadeh applied for a federal trademark registration on January 18, 2011, and then filed a Statement of Use attesting that she was the owner of the mark and had first used it in commerce on August 18, 2011.

66.     Ms. Taghizadeh's representations were false in view of the fact that the website www.highbrowmagazine.com is owned and operated by Highbrow Magazine, LLC.

67.     Highbrow is entitled to a declaration that the '814 registration for HIGHBROW MAGAZINE is invalid and an order canceling the registration under Section 37 of the Lanham Act, 15 U.S.C. § 1119.

68.     Additionally, the number of other websites, businesses, and federal trademark registrations using the word "Highbrow" either alone or with other words, show that the term "Highbrow" is generic because it lacks sufficient source-identifying effect to qualify for trademark protection under the Lanham Act when used for the goods and services described in the '814 registration and Highbrow Magazine's website.

69.     In the alternative, "Highbrow Magazine" is descriptive of the services covered by the '814 registration and should not be given trademark protection until Ms. Taghizadeh proves

to the U.S. Patent & Trademark Office that the term has acquired distinctiveness for the goods or services described in the application.

## Demand for Jury Trial

70.     Highbrow respectfully demands a trial by jury on all claims and issues so triable.

## Prayer for Relief

WHEREFORE, Highbrow respectfully requests that the Court enter judgment against Highbrow Magazine and Tara Taghizadeh as follows:

1.      Issuing a declaratory judgment that Highbrow's use of the "HIGHBROW" mark does not violate the rights of Highbrow Magazine and Ms. Taghizadeh and does not constitute trademark infringement, unfair competition, or false designation of origin under federal or Virginia law, and that its use does not constitute a violation of the Anticybersquatting Consumer Protection Act.

2.      Ordering the '814 registration canceled at the United States Patent & Trademark Office or, alternatively, that it is descriptive and requiring Ms. Taghizadeh to prove she is the owner of the mark "HIGHBROW MAGAZINE" and that it has acquired the distinctiveness required under the Lanham Act.

3.      Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), and awarding Highbrow its costs and reasonable attorney fees.

4.      Awarding such further and other relief as the Court deems just and proper.


Dated: March 29, 2016             s/ Susan Bristow-Ford
                                  Susan Bristow-Ford, OSB 970362
                                  Attorney for Highbrow, LLC